UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN JOHNSON,

       Plaintiff,                        Case No.

v.

                                        Hon.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

       Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Kathryn Johnson ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint against Defendant Blue Cross Blue Shield of Michigan ("Defendant").

**PARTIES AND JURISDICTION**

1. Plaintiff is an individual residing in Fenton, Michigan.

2. Defendant is a domestic nonprofit organization with a principal place of business located at 600 E. Lafayette Blvd., Detroit, Michigan.

1

3. Plaintiff's claims arise out of Defendant's violation of the Americans with Disabilities Act of 1991 42 U.S.C. § 12102(1).

4. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

6. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging disability discrimination on February 25, 2022.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by Defendant until her termination effective January 5, 2021.

### Defendant's Mandatory Vaccine Policy

8. Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

9. Defendant required employees and contractors to be vaccinated by December 8, 2021.

10. Defendant never required visitors or vendors to be vaccinated.

11. The last day for employees to request accommodations to the vaccine

2

mandate was November 11, 2021.

12. The decision whether to grant or deny religious and medical vaccine accommodations to applicants was made less than two (2) weeks later, on November 24, 2021.

13. Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021, until January 5, 2022.

14. Defendant's accommodation process was arbitrary and woefully inconsistent.

15. Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

16. Defendant's employees were not informed of questions ahead of time.

17. Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

18. The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

19. When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

20. The interviewees were threatened to keep their answers short and to the point because time was "running out" and time was "limited."

21. Defendant told interviewees that it had not reviewed their written

accommodation requests.

22. Defendant denied accommodation to interviewees with language barriers and/or difficulty answering questions due to medical conditions.

23. Defendant asked employees the following questions:

    a. Do you feel like the COVID-19 vaccines were rushed?
    b. What do you do when you are in physical pain?
    c. Do you take Aspirin, Sudafed, Tums, or Tylenol?
    d. Do your beliefs prevent you from receiving medical treatments?
    e. Do you have a primary care physician?
    f. Has your doctor ever prescribed medication?
    g. What would you do if your doctor prescribed medication?
    h. What medication have you taken?
    i. Have you always followed this religious belief?
    j. When was the last time you received a vaccination?

24. Employees were told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells.

25. However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

26. Moreover, many of Defendant's employees were objecting to the COVID-19 vaccine for religious reasons that had nothing to do with stem cell research.

27. Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

28. Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because

it terminated unvaccinated employees.

29. Defendant touted on job recruiting websites that it requires COVID-19 vaccination with "no exemptions."

30. Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

31. Defendant terminated remote employees who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

## Plaintiff's Medical Accommodation Request

32. Plaintiff has a medical condition that prevents her from receiving the COVID-19 vaccination.

33. Plaintiff submitted a medical exemption request for the COVID-19 vaccine.

34. Defendant denied Plaintiff's exemption request.

35. Plaintiff did not receive the vaccine and was subsequently terminated on January 5, 2022.

36. Defendant refused to provide any specific reason for her denial.

37. The accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

38. No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

39. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

40. President Daniel J. Loepp announced on or about December 7, 2021: "I want to thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

41. President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating many employees.

42. Plaintiff was an excellent performer of her job duties.

6

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE

43. Plaintiff restates the foregoing paragraphs as set forth fully herein.

44. Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

45. Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

46. Defendant was legally required to engage Plaintiff in an interactive process before placing her on involuntary leave and terminating her.

47. Defendant discriminated against Plaintiff on account of her "actual or perceived" disability when she was placed on involuntary leave and was terminated on January 5, 2022.

48. Defendant's actions were knowing and willful.

49. "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. app. § 1630.9.

50. An employee begins the accommodation process by notifying her employer of her disability; "at that point, an employer's liability is triggered for

7

failure to provide accommodations." *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998)

51. After an employee has disclosed that she has a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

52. Rather than collaborate with Plaintiff or her doctor to find reasonable accommodation, Defendant chose to turn a blind eye and terminated Plaintiff.

53. Defendant did not seek further clarification from either Plaintiff or her doctor.

54. The law requires an employer to see an explanation from the doctor if it had concerns with the employee's medical diagnosis. *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1286 (7th Cir. 1996).

55. The employer's conduct is actionable "if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

56. An employer fails to engage in good faith when "the interactive process . . . was still ongoing when the employer terminated the worker's employment." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 336 (6th Cir. 2013)

57. "An employer may not stymie the interactive process of identifying a

reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *King v. Steward Trumbull Meml. Hosp.*, Inc., 30 F.4th 551, 567 (6th Cir. 2022) (citing *Cutrera v. La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

58. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

59. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Dated: August 10, 2023

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KATHRYN JOHNSON,

       Plaintiff,                 Case No.

v.

                                        Hon.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

       Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

      Plaintiff, Kathryn Johnson, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                                  Respectfully Submitted,
                                                  HURWITZ LAW PLLC

                                                  */s/ Noah S. Hurwitz*
                                                  Noah S. Hurwitz (P74063)
                                                  *Attorney for Plaintiff*

Dated: August 10, 2023